DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Wendell Norris, appeals from the judgment of the Summit County Court of Common Pleas which convicted him of robbery and grand theft. We affirm.
 I. {¶ 2} On January 23, 2003, Sheila Smith ("Smith") and her fiancé, Perry Wynn ("Wynn"), were getting ready to leave for work around 7:30 a.m. Smith's vehicle was idling unattended in her driveway. Wynn went outside after he noticed Appellant approaching the vehicle. An altercation eventually resulted between Wynn and Appellant: Wynn claimed that Appellant tried to steal the vehicle without permission while Appellant stated that Wynn gave him permission to use the vehicle in return for some drugs. Appellant, sitting in the driver's seat, accelerated the vehicle backwards out of the driveway while Wynn was standing in the open driver's side door with his hand on the steering wheel. Wynn was dragged by the car door backwards into a fence. As he was being dragged, Wynn struck Appellant in the face with a hammer which was in the back seat of the vehicle. Only after the vehicle hit a tree did Wynn gain his freedom from the vehicle's grasp. Appellant immediately drove away from the house with Smith's car. Wynn called the police who apprehended Appellant near Smith's abandoned, yet still idling, car.
 {¶ 3} On February 4, 2003, the Summit County Grand Jury indicted Appellant of robbery, in violation of R.C.2911.02(A)(2), assault, in violation of R.C. 2903.13(A), and grand theft, in violation of R.C. 2913.02(A)(1). A jury trial ensued. Appellant moved for Crim.R. 29 acquittal at the end of the prosecution's case in chief, and renewed that motion at the close of all evidence. The court denied both motions. The jury found Appellant guilty of robbery and grand theft, but acquitted him of the assault charge. The court sentenced Appellant to four years for the robbery conviction, and one year for the grand theft conviction, both sentences to be served concurrently. Appellant timely appealed, raising three assignments of error for our review.
 II. First Assignment of Error "The verdicts of guilty of robbery and not guilty of assaultare inconsistent such that the court erred in not grantingappellant's motion for acquittal."
 {¶ 4} In his first assignment of error, Appellant argues that the guilty verdict for robbery is inconsistent with the acquittal for assault. Appellant contends he may not be convicted of robbery where the jury acquitted him of the predicate assault charge underlying the robbery because that acquittal indicated that he did not cause any physical harm to Wynn. We disagree.
 {¶ 5} This Court follows the general rule that consistency between verdicts on separate counts of an indictment is unnecessary. State v. Whitlock (Aug. 30, 1995), 9th Dist. No. 16997, at 2; State v. Favors (Apr. 19, 1989), 9th Dist. No. 13793, at 9; State v. Cloyd (Oct. 29, 1986), 9th Dist. No. 12518, at 4-5.
"[I]nconsistent verdicts — even verdicts that acquit on a predicate offense while convicting on the compound offense — should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." United States v. Powell (1984),469 U.S. 57, 65, 83 L.Ed.2d 461.
Therefore, a "conviction will generally be upheld irrespective of its rational incompatibility with [an] acquittal [on a separate count]." Whitlock, supra, at 2, citing State v.Woodson (1985), 24 Ohio App.3d 143, 143-44. See, also, Dunn v.United States (1932), 284 U.S. 390, 393, 76 L.Ed. 356; Powell,469 U.S. at 65.
 {¶ 6} Appellant indicates that his conviction for robbery is inconsistent with his acquittal for the separate assault charge. Because the law does not require consistency between the verdicts of separate counts, we overrule Appellant's first assignment of error.[1]
 Second Assignment of Error "The state failed to prove the identity of the appellant asthe perpetrator of the offense in that the victim failed toidentify the appellant in court."
 {¶ 7} In his second assignment of error, Appellant contends that the State failed to prove his identity as the perpetrator of the alleged crime. Specifically, Appellant argues that the record fails to show that Wynn identified him in court. Where the victim does not identify the perpetrator in court, Appellant asserts that evidence beyond a reasonable doubt necessary to convict cannot exist. This Court disagrees.
 {¶ 8} Both the Ohio and Local Appellate Rules require the Appellant to "include in [his] brief * * * the reasons in support of the contentions [of Appellant], with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7); Loc.R. 7(A)(7) ("The argument shall contain * * * the supporting reasons with citations to the authorities and statutes on which the appellant relies.") The Appellant has the burden of affirmatively demonstrating error on appeal. See State v. McAdory, 9th Dist. No. 21454, 2004-Ohio-1234, at ¶ 32; Angle v. Western Reserve Mut. Ins. Co.
(Sept. 16, 1998), 9th Dist. No. 2729-M, at 2. In this case, Appellant has failed to cite any sources of law stating that the victim must personally identify a defendant in court in a criminal case for a conviction to stand "If an argument exists that can support this assignment of error, it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 and 18673, at 18. As Appellant's brief fails to cite any supporting authority, we overrule his second assignment of error.
 Third Assignment of Error "The jury verdict finding [appellant] guilty was against themanifest weight of the evidence; the evidence is not legallysufficient to support the verdict, since circumstantial evidencerelied upon to prove essential elements of the crime are notirreconcilable with reasonable theories of innocence."
 {¶ 9} In his third assignment of error, Appellant argues that his convictions were against the manifest weight of the evidence and supported by insufficient evidence as a matter of law. Specifically, Appellant asserts that the evidence offered by the defense was more credible than that of the victim, Wynn: "[Wynn] was a convicted drug user, such that the testimony of [Appellant] is more credible, and that of the State is simply insufficient." We find Appellant's assertions meritless.
 {¶ 10} Sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52. As to sufficiency, Crim.R. 29(A) states that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." However, if the record demonstrates that reasonable minds may reach differing conclusions as to the proof of material elements of a crime, a trial court may not grant a Crim.R. 29(A) motion for acquittal. State v. Smith, 9th Dist. No. 20885, 2002-Ohio-3034, at ¶ 7, citing State v. Wolfe
(1988), 51 Ohio App.3d 215, 216. "`In essence, sufficiency is a test of adequacy.'" Smith at ¶ 7, quoting Thompkins,78 Ohio St.3d at 386.
 {¶ 11} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3, citingThompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant maintains that his conviction is against the manifest weight of the evidence:
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
This power is to be invoked only in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id. Contrary to Appellant's assertions, the State, in a circumstantial evidence case, need not show that the evidence is irreconcilable with any reasonable theory of innocence in order for a conviction to stand on appeal. State v.Jenks (1991), 61 Ohio St.3d 259, 273.
 {¶ 12} In this case, Appellant was convicted of robbery and grand theft. An individual commits robbery when he inflicts, attempts to inflict, or threatens to inflict physical harm on another during the course of a theft offense. R.C. 2911.02(A)(2). R.C. 2913.02 defines theft:
"No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent[.]" R.C. 2913.02(A)(1).
Deprivation includes withholding property for a period of time such that it appropriates a substantial portion of the property's value or use, or disposing of the property in a manner that makes it unlikely that the owner will recover it. R.C. 2913.01(C)(1), (2). One acts knowingly when he is aware that his conduct will probably cause a specific result. R.C. 2901.22(B). Theft is classified as grand theft when the property taken is valued at between $5,000.00 and $100,000.00. R.C. 2913.02(B)(2).
 {¶ 13} Wynn testified that, on the morning of January 23, 2003, he went outside around 7:30 a.m. to warm up Smith's 1988 Oldsmobile Cutlass. He then returned to the house to fix a lunch, and suddenly noticed the car backing out of the driveway. Wynn immediately ran out of the door after the car, "snatched the car door open and said [to the driver], `Hey, you are caught, get out [of] the car[,]'" as he reached for the car keys in the ignition.
 {¶ 14} The man in the car, apparently identified as Appellant, did not get out of the car. Wynn recalled that:
"[Appellant] [l]ooked me in my eyes and said, `I can't go back," [and] floored it. * * * So, [Appellant] throws it in reverse, with the door open we rolled back and I [was] pinned in the door. * * * I fell, [Appellant] dragged me. We hit the fence. * * * [I kept saying] `Stop the car, man. Stop the car.' [Appellant was] persistently still going, I panic, reach in the backseat. I grab the hammer. * * * I pop [Appellant] on the side of his cheekbone. * * * Couldn't swing down because of the top of the car. I had to side arm him, stop the car, bam, bam, he took the hit. He kept going.
"Hit the tree, bam, threw it back in drive. * * * I'm off now, I fell off, just looking at him, he peels out and hit the blue car. * * * [T]he impact of the tree cause[d] [me] to fall off * * * [onto] my left hip, bam. * * * I look at him, I see which way he goes, he goes down and makes a left, I run to the house, I call 911."
 {¶ 15} Smith, who was in the bathroom preparing to leave for work throughout the entire incident, heard Wynn run out the door. She then heard him return quickly, yelling for someone to call the police. Smith recalled looking outside her house to see that her neighbor's fence had been knocked over, and a car on the street had been side swiped.
 {¶ 16} Officer Leonard Stephens, a twelve year veteran of the Akron Police Department, responded to Wynn's call. He recalled that Wynn was very excited as he told Officer Stephens what had happened. Officer Stephens observed that the neighbor's fence had been knocked down and a car on the street had been side swiped. He also broadcast a description of the car which had been taken. Shortly after Officer Stephen's broadcast, while he was still speaking with Wynn, a second report was broadcast regarding the reckless operation of a vehicle on a nearby road. The car, according to the dispatch, was driving erratically both on the road, and on the sidewalks.
 {¶ 17} Officer Troy Looney, who had heard both reports, passed the car on East Avenue. He remembered that the car was weaving on the road, and contained only a driver with no passengers. After matching the license plate numbers to that of Smith's car, Officer Looney turned his police car around and turned on his lights to initiate a traffic stop. Only ten or twenty seconds later, he found the same car in the middle of the road. It was unoccupied, though still running. Officer Looney immediately secured the vehicle so that the driver could not double back to elude him. He noticed blood on the driver's side near the steering wheel and the interior of the door. He also noted damage to the outside of the open driver's side door. The driver of the car had already vanished from sight.
 {¶ 18} Officer Anthony Sutton responded to the area after Officer Looney located the car. Along with at least one other officer, they tracked Appellant using the footprints he left behind in the snow. Officer Sutton found and apprehended Appellant who was "[j]ust standing against [a nearby] house, up against the house facing it." Appellant's shirt was covered in blood and his face was injured. Appellant told Officer Sutton that he was hiding by the house because he was scared. When asked how he had acquired his injuries, Appellant responded that:
"[H]e got a ride from a friend and he hit his head on the car as the guy started driving erratically down East Avenue. * * * He said he was inside the vehicle and the person that was driving, that he did not know, saw the police officers, he began driving erratically. [Then] he slammed on the brakes and he hit his head on the windshield, that's how he sustained the injuries."
Appellant told Officer Sutton that there were multiple people in the car when Officer Looney passed it, and that Appellant was not driving the car.
 {¶ 19} Officer Stephens and Wynn also went to the scene of Appellant's arrest so that Wynn could identify Appellant. Wynn was then taken to a local hospital for injuries to his thigh. According to notations in the hospital record, Wynn told the medical staff that he hurt himself because he tackled someone who was trying to steal a car. However, Wynn insisted that the nurse incorrectly used the word "tackle." "If they wrote it down as tackling, they wrote it down wrong. There's nothing wrong with that."
 {¶ 20} After the close of the State's evidence, Appellant took the stand and offered a very different version of that morning's events. Appellant stated that he had known Wynn for almost ten years, at least since 1997, though Wynn insisted he did not know Appellant. Appellant indicated that he met Wynn through drugs and saw him often around the neighborhood because he would stay at his grandmother's house.
 {¶ 21} On that particular morning, Appellant testified that he was walking past Wynn's house at around 5:30 a.m. and saw Wynn outside with his dog. He stopped for twenty or thirty minutes to converse with Wynn, and eventually asked Wynn for a ride home. Wynn told Appellant that he would trade "three pieces" of crack cocaine, worth about $60, for permission to use the car for two days. Appellant, who had five pieces of crack cocaine with him, agreed.
 {¶ 22} Appellant took the vehicle to a place called Mr. Pantry nearby where he discovered that there were no keys in the ignition. Appellant explained that the Cutlass is the type of vehicle where one can start the car and remove the keys without having the car stop running. Appellant immediately returned to Wynn's house to get the keys. They began to argue, with Wynn standing in the open driver's side door while Appellant remained seated in the car. When Appellant told Wynn that he had "to tell [Smith] to give [him] $60 or [he] might have to go keep the car[,]" Wynn suddenly pulled a small hammer from his front pocket and hit Appellant three times in the face with it. Appellant then "automatically went into shock and put the car in drive and backed out." He was certain he did not hit anything, including Wynn, as he left.
 {¶ 23} Appellant, who was bleeding so badly he had difficulty seeing, drove immediately to his cousin's house where he told her to call the police and report the assault. He did not want to speak to the police himself because he had an outstanding warrant. After talking to his cousin, he left and began driving somewhat erratically, due partly to his bleeding and partly to his intoxication, in the East Avenue area. He recalled the police car passing him, and then he "got out of the car and went on the side of the house and [held] [his] face * * * [b]ecause [he] was in shock."
 {¶ 24} From the side of the house, he watched the officer turn down the music in the car, and other officers come to search for him. After Officer Sutton discovered and arrested Appellant, he told Officer Sutton that he hit his head on the windshield of the car while another individual was driving. At trial, though, he admitted that he was the only occupant of the car. Appellant insisted that his statement to Officer Sutton was not a lie because "that's two different sides of the story right there." Appellant asked the officers if he could make a police report regarding Wynn's assault. However, he said that the police only wanted him to write a statement, not a report, and so he refused. "So, you know, I was the bad guy. They didn't want to listen to my side of the story." The police took him to the same hospital as Wynn.
 {¶ 25} After reviewing the evidence offered at trial, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in convicting Appellant of robbery and grand theft. In his brief, Appellant stresses that Wynn had prior convictions and thus was not a credible witness.[2] The credibility of the witnesses, including the effect of prior convictions, however, is properly left to the jury's determination. In re Name Change of Savers (Aug. 9, 2000), 9th Dist. No. 19797, at 9, citing State v. Vega (Oct. 27, 1999), 9th Dist. No. 19369, at 12. Where conflicting evidence is offered at trial, we will not overturn a verdict on a manifest weight challenge when the jury chooses to find the evidence offered by the prosecution more credible. See State v. Moore,
9th Dist. No. 03CA0019, 2003-Ohio-6817, at ¶ 18, citing State v.Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. A finding that a conviction is supported by the weight of the evidence also includes a finding of sufficiency of the evidence.Smith at ¶ 9, quoting State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. Accordingly, we overrule Appellant's third assignment of error.
 III. {¶ 26} We overrule Appellant's assignments of error and affirm the decision of the Summit County Court of Common Pleas.
Judgment affirmed.
Slaby, J. Batchelder, J. concur.
[1] We also note that no inconsistency truly exists. While assault requires that an individual knowingly cause or attempt to cause physical harm to another, the perpetrator of a robbery need not knowingly inflict, attempt to inflict, or threaten to inflict, any harm. See R.C. 2903.13(A); R.C. 2911.02(A)(2). Given the different mental state required for assault, one may commit robbery without also committing assault.
[2] Both Wynn and Appellant had prior criminal records which were admitted at trial. Wynn was convicted in 1994 of carrying a weapon, receiving stolen property and resisting arrest. In 1998, he was convicted of drug possession and attempted assault. Appellant had prior convictions for: receiving stolen property in 1995, complicity to commit burglary in 1999, receiving stolen property in 2000, and attempted robbery in 2002.