The STATE of Ohio, Appellee,

v.

ATALLA, Appellant.

[Cite as *State v. Atalla,* 157 Ohio App.3d 698, 2004-Ohio-3414.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 21747.

Decided June 30, 2004.

P. Steven Maasz, for appellant.

Greg Ward, Cuyahoga Falls Law Department, for appellee.

WHITMORE, Presiding Judge.

{¶ 1} Defendant-appellant, Emad S. Atalla, has appealed from his conviction of misdemeanor domestic violence in the Cuyahoga Falls Municipal Court. This court reverses and remands for a new trial.

I

{¶ 2} On April 30, 2003, Nadia Belizario swore out a complaint of domestic violence against appellant wherein she alleged that on the evening of April 7, 2003, appellant hit her on the right arm, shoulder, and back, in violation of R.C. 2929.19(A). A warrant for appellant's arrest was issued on that same day. Appellant was arrested on May 2, 2003. On May 5, 2003, appellant was arraigned on the charge of domestic violence and entered a plea of not guilty. Appellant was released on a $50,000 bond and ordered to surrender his visa/passport and to have no contact with his minor daughter.

{¶ 3} A two-day jury trial began on August 28, 2003. Appellant was found guilty and was sentenced as follows: 180 days in jail with 177 days suspended; credit for the 3 days he served in jail at the time of her arrest; 6 months' probation; anger-management classes; and a $1,000 fine, of which $800 was suspended.

{¶ 4} Appellant has timely appealed his conviction, asserting five assignments of error. We have consolidated some of his assignments of error for ease of analysis.

II

Assignment of Error Number One

"Appellant's trial counsel rendered ineffective assistance."

{¶ 5} In his first assignment of error, appellant has argued that he was denied the effective assistance of trial counsel. Specifically, he has argued that his counsel's representation was unconstitutionally deficient during voir dire, trial, and closing arguments.

{¶ 6} The Sixth Amendment to the United States Constitution guarantees the right to the effective assistance of counsel for each defendant. Courts use a two-step process in determining whether a defendant's right to effective assistance of counsel has been violated:

"First the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 7} In order to demonstrate prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of

the trial would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 8} In support of his first assignment of error, appellant has argued that (1) appellant was prejudiced during voir dire; (2) defense counsel failed to present a cohesive defense; (3) defense counsel failed to conduct an effective cross-examination of Belizario; (4) defense counsel failed to request a curative instruction when alleged prior bad acts by appellant were mentioned by Belizario at trial; (5) defense counsel agreed to a stipulation that prejudiced appellant; and (6) defense counsel failed to object to the state's closing arguments that alluded to the fact that appellant did not testify in his own defense.

{¶ 9} Appellant first has argued that during voir dire, defense counsel was ineffective because he allowed appellant to be prejudiced by the trial judge and the prosecutor. Appellant has also argued that defense counsel prejudiced his defense during voir dire. He has claimed that the prejudice occurred when defense counsel failed to object to questions from the prosecutor during voir dire implying that appellant was of the same culture, religion, and general mindset as the perpetrators of the September 11, 2001 terrorist attacks on the United States ("September 11th"). Appellant has further argued that defense counsel further prejudiced his defense by continuing this same line of questioning during appellant's voir dire. The state, however, has argued that defense counsel's failure to object to and later pursuit of this line of questioning were sound trial tactics.

{¶ 10} This court notes that the overriding purpose of voir dire is to examine prospective jurors and determine whether a potential juror both meets the statutory qualification of a juror and is not biased or prejudiced towards either litigant. *Vega v. Evans* (1934), 128 Ohio St. 535, 191 N.E. 757, paragraph one of the syllabus. In order to ensure that result, counsel is afforded reasonable latitude on the voir dire examination. *Krupp v. Poor* (1970), 24 Ohio St.2d 123, 126, 53 O.O.2d 320, 265 N.E.2d 268.

{¶ 11} The Ohio Supreme Court has further explained:

"The scope of the inquiry will not be confined strictly to the subjects which constitute grounds for the sustaining of a challenge for cause; but if it extends beyond such subjects it must be conducted in good faith with the object of obtaining a fair and impartial jury and must not go so far beyond the parties and the issues directly involved that it is likely to create a bias, a prejudice, or

an unfair attitude toward any litigant." *Vega v. Evans*, 128 Ohio St. 535, 191 N.E. 757, at paragraph two of the syllabus.

{¶ 12} Ohio courts have held that although questions regarding religion are permissible during voir dire, they must be presented for the sole purpose of determining whether bias exists, and not done in a mode or manner that *creates* bias, prejudice, or an unfair attitude toward any litigant. *State v. Jones* (1984), 20 Ohio App.3d 331, 332, 20 OBR 434, 486 N.E.2d 179 (holding that race, ethnicity, and religious biases may be proper subjects of voir dire).

{¶ 13} "Much rests in the discretion of the court as to what questions may or may not be answered, but in practice very great latitude is, and generally ought to be indulged." *Dowd–Feder, Inc. v. Truesdell* (1936), 130 Ohio St. 530, 533, 5 O.O. 179, 200 N.E. 762. Therefore, the scope of the examination during voir dire is within the sound discretion of the trial court and the judgment will not be reversed absent a showing that the trial court abused its discretion. *State v. Jenkins* (1984), 15 Ohio St.3d 164, 186, 15 OBR 311, 473 N.E.2d 264, certiorari denied (1985), 472 U.S. 1032, 105 S.Ct. 3514, 87 L.Ed.2d 643, citing *Pavilonis v. Valentine* (1929), 120 Ohio St. 154, 157, 165 N.E. 730. " '[A]buse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. When exercising discretion, the trial court should allow reasonable inquiry on any relevant matter that is determinative of the issues of the case. *Dayton v. Meyer* (Mar. 29, 1991), 2d Dist. No. 11848, 1991 WL 47533, appeal dismissed (1991), 61 Ohio St.3d 1428, 575 N.E.2d 216. A juror may be removed for cause if the juror's answers given in voir dire reveal that the juror cannot be fair and impartial or will not follow the law as given by the court. R.C. 2313.42(J); *State v. Cornwell* (1999), 86 Ohio St.3d 560, 563, 715 N.E.2d 1144, certiorari denied (2000), 528 U.S. 1172, 120 S.Ct. 1200, 145 L.Ed.2d 1103.

{¶ 14} Our review of the record reveals that the state pursued a line of questioning during voir dire that focused on ethnicity, religion, and September 11th. The state announced the following before conducting voir dire examination:

"[D]uring this trial, you're going to hear about people from different cultures. Matter of fact, almost completely opposite ends of the world. And is there anybody here who feels, because of things like September 11 and events like that, is there anybody here who feels they cannot be objective if somebody is from a certain culture, has certain religious beliefs?"

{¶ 15} Three jurors immediately responded "yes" and stated that they could not be objective towards someone who held the "certain religious beliefs" alluded

to by the state, and two of the three added that they could not be objective with someone from the "certain culture" alluded to by the state.

{¶ 16} The state further probed the jurors' opinions on the issue of culture and religion when it asked the entire jury pool:

"Do any of you think that just be—if you hear testimony that just because they're from a certain part of the world, or have a certain religious belief, that—that automatically you cannot put that aside and just base this case on the facts as it happened?"

{¶ 17} One of the three veniremen who had previously voiced his inability to be objective reiterated his inability to be objective following this question. In addition, an unnamed venireman voiced his inability to be objective in response to the state's question.

{¶ 18} The state then asked the entire jury pool:

"If there are—you know, there are some cultures around the world that do things that I would never accept, and within those culture that could be based upon religious beliefs within that culture, and I have a major problem with some of that. Trying to think of how to ask the next question, since you all put some good—some good issues out there. If—if a person is not from one of the countries or has a specific religious belief that would be tied to something like September the 11th, for example, would that make a difference to you?"

{¶ 19} Several of the veniremen voiced confusion about the question, so the state rephrased it by asking:

"If the person is not from Al–Qaeda, for example, say they don't come from Afghanistan, but they are from a different part of the world, would that—do you still think you would not be able to be objective in that type of situation?"

{¶ 20} One of the three veniremen who originally voiced an inability to be objective reiterated her lack of objectivity for someone fitting the parameters posed by the state in its question.

{¶ 21} Soon thereafter, the unnamed venireman stated that "different parts of the world they do things differently," to which the state responded that "[i]t just depends on where they're from or their religious belief?" The unnamed venireman then stated that "things might [be] acceptable in other places * * * that aren't acceptable here." The state then asked its final question along this line: "I just want to know in general, if they believe something different from you, if that would make it impossible for you to decide the facts of the case, without knowing what those differences are."

{¶ 22} In addition to the state's questions regarding culture, ethnicity, and religion, defense counsel also posed numerous questions about race and ethnicity

during voir dire. Defense counsel asked one of the three veniremen who had previously voiced an inability to be objective during the state's voir dire, "Now with [regard] to 9–11, we have—we have issues that we have, my client is, at least, Egyptian, all right? And that fact alone, that causes you a problem. Correct?" The venireman responded "yes." Defense counsel then asked another one of the veniremen who had voiced an inability to be objective during the state's voir dire about the events of September 11th and how the events caused her "problems" in the instant matter. She stated that the events of September 11th, specifically the taking of life, were against her religious beliefs and that it was "possible" that during deliberations she would consider the events of September 11th when judging appellant.

{¶ 23} Defense counsel then engaged in voir dire with a third venireman who had previously voiced his inability to be objective during the state's voir dire. Defense counsel asked the venireman whether they would even be discussing race, culture, and religion if the defendant at issue was Italian, Irish, or "any other nationality other than the Middle East * * * because that's how much impact 9–11's had, correct?" The venireman answered "yes," then stated that he would try to be objective, but the feelings of bias he had previously expressed might "be in the back of [his] mind playing a role" during jury deliberations.

{¶ 24} Defense counsel then questioned the final venireman who had previously voiced an inability to be objective during the state's voir dire. When asked to explain his views on other cultures and religions, the venireman said that when people come to this country from other countries, they might bring religious beliefs that "drive behavior in the areas that [he did not] agree with." Defense counsel responded, "Okay. And the religion that I think that you probably would be making reference to, my guess is the religion like Islam * * *," to which the venireman agreed.

{¶ 25} In the instant appeal, appellant has argued that the state's action of framing its questions to the veniremen in the context of September 11th, "certain culture[s]," and "certain religions" created the impression that appellant was Islamic and that his native country played a role in the September 11th attacks. As a result, he has argued, the state poisoned the jury pool against him. He has further argued that defense counsel's failure to object to this line of questioning, as well as defense counsel's continuation of this line of questioning during voir dire, further poisoned the jury pool against him and constituted the ineffective assistance of counsel.

{¶ 26} Directing our attention first to the state's voir dire, we find error in both the breadth and scope of questions asked. The state framed its questions with references to September 11th, "other culture[s]," and religions "tied to" September 11th. By asking these questions, the state essentially told the

potential jurors that if they could not be impartial to the perpetrators of September 11th, then they could not be impartial to appellant because he shared the perpetrators' culture, religion, and mindset. This type of examination of veniremen is impermissible because it goes far beyond a quest to root out prejudice and actually creates prejudice in the minds of the potential jurors. The fact that this occurred without objection from defense counsel adds to the impermissible character of the line of questioning; defense counsel's silence during the state's questioning telegraphed defense counsel's acceptance of the questions and the underlying assumptions about appellant embedded in the questions.

{¶ 27} Our inquiry into the prejudice created during voir dire does not end with the state's line of questioning. Our review of defense counsel's questions reveals that defense counsel continued the "certain culture[s]" and "other religions" line of questioning launched by the state, then asked the jury pool about Al Qaeda and Islam. This can be seen as nothing other than defense counsel reiterating the state's message that if the potential jurors could not be impartial to members of Al Qaeda and Islam, then they could not be impartial to appellant because appellant shared the perpetrators' culture, religion, and mindset.

{¶ 28} Based on the foregoing, we find that the state's line of questioning, defense counsel's failure to object to the state's subject line of questioning, and defense counsel's continuation of this line of questioning during voir dire prejudiced appellant's defense. Given our determination that appellant's defense was prejudiced, we must next determine whether the prejudice "deprive[d] [appellant] of a fair trial * * * whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 29} Our review of the evidence presented at trial indicates that Belizario was the only witness who testified on behalf of the state. She testified to the events of April 7, 2003, as well as the unique characteristics of her life prior to the time she reported the April 7, 2003 attack by appellant to law enforcement. Belizario testified to her friendship with Nargis Messis, appellant's ex-wife, and the fact that Messis's attorney was the first to notify law enforcement of the April 7, 2003 attack. Belizario also testified that when she left appellant's home in late April 2003 after he had attacked her, she moved into the apartment of Louis Londrico, who lived in the apartment building next to Messis. She further testified that two months later, in June 2003, she moved into the apartment of a Mr. Puskas, a neighbor of Londrico whom she then married in August 2003. In addition to Belizario's testimony, the record reveals that there was no forensic or medical evidence to corroborate her claim of physical abuse. There was also no police report presented during trial because, according to Belizario's own testimony, she did not report the attack by appellant to the police until late April 2003.

{¶ 30} Given the jury prejudice created during voir dire, along with the unusual circumstances under which Belizario ultimately filed her complaint against appellant, this court concludes that appellant was not afforded a "fair trial * * * whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. As a result, we conclude that defense counsel's failure to object to the state's line of questioning during voir dire, as well as defense counsel's continuance of that line of questioning during voir dire, constituted the ineffective assistance of counsel.[1]

{¶ 31} Based on our disposition of appellant's first argument in support of his contention that he was afforded the ineffective assistance of counsel, we decline to address appellant's remaining arguments on this matter. Appellant's first assignment of error has merit.

### Assignment of Error Number Two

"Attempting to correct the inadvertent introduction of irrelevant and unfairly prejudicial evidence of alleged subsequent bad act by defendant through a stipulation of the parties which exacerbated rather than cured the unfair prejudice was plainly erroneous."

### Assignment of Error Number Three

"It was plain error to allow prosecutorial misconduct through repeated improper allusions during closing argument to defendant's failure to testify."

{¶ 32} In appellant's second assignment of error, he has argued that defense counsel prejudiced appellant's defense when it entered into a stipulation regarding an alleged prior bad act committed by appellant and mentioned by Belizario while she was testifying. In his third assignment of error, he has argued that the state engaged in prosecutorial misconduct when it alluded to the fact that appellant did not take the stand in his own defense during trial.

{¶ 33} This court notes that, pursuant to both the Ohio and local appellate rules, appellant must include in his brief "the reasons in support of the contentions [of appellant], with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 16(A)(7); Loc.R. 7(A)(7). The appellant bears the burden of demonstrating error on appeal. *State v. Norris,* 9th Dist. No. 21619, 2004–Ohio–2516, at ¶ 8, 2004 WL 1103999.

---

1. During voir dire, generic questions designed to identify jurors with potential prejudices have been and continue to be permissible and necessary. However, when inquiring of particularly sensitive and inflammatory issues relating to ethnicity, religion, cultural bias, and terrorism, once a juror has expressed even the potential for bias, an in-camera voir dire of that particular juror is the appropriate means of followup. An in-camera voir dire will prevent the poisoning of the entire jury pool.

{¶ 34} In the instant matter, appellant has failed to set forth any sources of law in support of his second and third assignments of error. "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out." *Cardone v. Cardone* (May 6, 1998), 9th Dist. Nos. 18349 and 18673, at 18, 1998 WL 224934, appeal not allowed (1998), 83 Ohio St.3d 1429, 699 N.E.2d 946. Because appellant's brief fails to cite any law in support of his second and third assignments of error, we decline to address either assignment of error. Appellant's second and third assignments of error are without merit.

### Assignment of Error Number Four

"The trial court erred by declining to instruct the jury that actions of the alleged victim which would otherwise constitute 'consortium' or 'cohabitation' lose such character, in the context of [R.C. 2919.25], if they were performed solely for hire."

### Assignment of Error Number Five

"Insufficient evidence supported appellant's conviction."

{¶ 35} In his fourth assignment of error, appellant has argued that the trial court abused its discretion when it failed to adopt his requested jury instructions. In his fifth assignment of error, appellant has argued that his conviction was based on insufficient evidence.

{¶ 36} In light of our disposition of appellant's first assignment of error, we decline to address his fourth and fifth assignments of error. See App.R. 12(A)(1)(c).

### III

{¶ 37} Appellant's first assignment or error is sustained. We decline to address his second, third, fourth, and fifth assignments of error. The judgment of the trial court is reversed, and the matter is remanded for a new trial.

> Judgment reversed
> and cause remanded.

BAIRD and BATCHELDER, JJ., concur.