NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0457n.06

No. 10-3112

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jul 06, 2011**

LEONARD GREEN, Clerk

NASIR MUNTASER,

        Petitioner-Appellant,

v.

MARGARET BRADSHAW, Warden

        Respondent-Appellee.

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

BEFORE: MARTIN, SUHRHEINRICH and KETHLEDGE; Circuit Judges.

**SUHRHEINRICH, Circuit Judge**. Nasir Muntaser ("Muntaser") seeks habeas corpus relief from the judgment and sentence entered against him by the Ohio Court of Common Pleas of Cuyahoga County. Because his claims are either procedurally defaulted or meritless, we **DENY** his petition.

## I. BACKGROUND

Muntaser's state court convictions for arson, aggravated arson, and felony murder arise out of events occurring on the evening of January 22, 2002, in Cleveland, Ohio. A thorough recitation of the facts is available at *State v. Muntaser*, No. 81915, 2003 WL 22455703 (Ohio Ct. App. 8 Dist. Oct. 30, 2003). We review the basic facts relevant to Muntaser's petition.

Muntaser owned Nick's Superette, a convenience store, in Cleveland, Ohio. In January 2000, Muntaser hired Ali Alnajada ("Alnajada") to operate the store. Due to sustained financial difficulties, Muntaser ultimately decided to dispose of the store in a manner that would allow him

to collect insurance proceeds. In 2001, Muntaser obtained an insurance policy, which included $55,000 coverage for fire loss. In January 2002, Muntaser began to make plans to burn down the store. He hired Tayser Marzouk ("Marzouk") to set the fire. He also, with the help of Alnajada, staged a burglary at the store in the hopes of establishing the appearance of neighborhood animosity for the store, which could serve as a motive for an arsonist.

Four days prior to the fire, Muntaser met Marzouk at the store to discuss the plan and give Marzouk a key to the store. Marzouk then contacted his acquaintance, Anthony Pascol ("Pascol"), and asked Pascol to help move inventory from the store. Pascol believed Marzouk was the owner of the store and agreed to help. On the night of January 22, 2002, Marzouk and Pascol entered the store. At some point, Pascol went outside for a break; upon reentering the building he saw Marzouk spreading gasoline on the floor. Pascol asked Marzouk what he was doing, but before Marzouk could answer, there was an explosion. Pascol escaped, but suffered serious burns. Marzouk died in the explosion and resulting fire. The fire also damaged the neighboring duplex where two men lived.

The Cleveland Arson Unit concluded that the fire was intentionally set. Following the fire, Alnajada initially denied any knowledge about the fire. However, once he failed a polygraph test, he confessed to his participation and agreed to wear a wire while speaking with Muntaser. During a recorded conversation, Muntaser said several incriminating things: he admitted giving a key to Marzouk to enter the store and assured Alnajada that the staged break-in would explain why one of the keys to the store was missing.

Muntaser was subsequently arrested and charged in a nine-count indictment.[1]  A jury convicted him of all nine counts.  The trial court ordered sentences for several of the counts to run consecutively and imposed a total term of 39 years to life.  Muntaser directly appealed to the Ohio Court of Appeals for the Eighth Appellate District and the Supreme Court of Ohio with no success.

Thereafter, Muntaser filed an application with the Ohio Court of Appeals pursuant to Ohio R. App. P. 26(B), which allows for reopening of an appeal based on a claim of ineffective assistance of appellate counsel.  The court denied the application on res judicata grounds; it also considered and rejected his application on the merits.  Muntaser unsuccessfully appealed to the Ohio Supreme Court.  Muntaser also moved the state trial court for leave to file a motion for a delayed new trial on the basis of newly discovered evidence, which included five new affidavits regarding his innocence and additional documentation that Alnajada was the sole owner of Nick's Superette.  The Court of Common Pleas, the Ohio Court of Appeals, and the Ohio Supreme Court all denied him relief.

On March 3, 2005, Muntaser filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 in the Northern District of Ohio.  Pursuant to local rules, a magistrate judge received Muntaser's petition for a Report and Recommendation (R&R).  The magistrate judge concluded that his ineffective assistance of counsel claims were not exhausted and that his other claims were meritless.  In January 2007, the district court determined that Muntaser's ineffective assistance of counsel claims were exhausted but were procedurally defaulted and that his other claims were meritless.  *Muntaser v. Bradshaw*, No. 3:05-cv-751, 2007 WL 210400 (N.D. Ohio 2007).  The district court also denied Muntaser's subsequent motion for alteration of the opinion or a new trial,

---

[1]Counts One, Two, Three, Four, Six, Seven, and Eight charged aggravated arson in violation of Ohio Rev. Code § 2909.02.  Count Five charged arson in violation of Ohio Rev. Code § 2909.03.  Count Nine charged murder in violation of Ohio Rev. Code § 2903.02.

but granted him a certificate of appealability, pursuant to 28 U.S.C. § 2253, as to all issues raised in his petition. *Muntaser v. Bradshaw*, No. 3:05-cv-751, 2007 WL 4248191 (N.D. Ohio 2007).

After Muntaser appealed to this Circuit, but before appellate oral arguments, the Ohio Attorney General, on behalf of Respondent Bradshaw, requested a remand. The Attorney General explained that during the pendency of the appeal the Ohio Supreme Court had decided *State v. Davis*, 894 N.E.2d 1221(Ohio 2008), which held that the Ohio Court of Appeals may not deny a Rule 26(B) application on res judicata grounds unless the Ohio Supreme Court actually considered questions of ineffective assistance of appellate counsel on the merits during direct review. The Attorney General claimed that because the federal district court had relied on the Ohio Court of Appeals decision of res judicata in determining that Muntaser's ineffective assistance of appellate counsel claims were procedurally defaulted, the district court's decision had been "undermined." This Circuit remanded the case.

On remand, a magistrate judge issued a second R&R, which considered Muntaser's ineffective assistance of counsel claims. It concluded one claim was procedurally defaulted and the others failed to present any basis for habeas relief on the merits. On December 21, 2009, the district court rejected all of Muntaser's ineffective assistance of counsel claims as meritless and denied the petition. *Muntaser v. Bradshaw*, 674 F. Supp. 2d 875 (N.D. Ohio 2009). The court's opinion included a certificate of appealability for all issues and Muntaser timely appealed.

## II. ANALYSIS

Muntaser presents thirteen discrete claims for our review:[2] (1) whether he was denied due process when the jury instructions were inadequate and confusing; (2) whether he was denied due process when he was convicted of murder although the evidence indicated Marzouk caused his own death; (3) whether he was denied due process when his convictions were based on insufficient evidence; (4) whether his rights to a jury trial and due process were denied when he was sentenced to a consecutive sentence; (5) whether he was denied due process when his conviction for felony murder was based on an underlying felony that the jury did not agree to unanimously; (6) whether he was denied due process when he was not awarded habeas corpus on a showing of his actual innocence; (7) whether he was denied a fair trial by the admission of recorded conversations that included references to other bad acts; whether his trial counsel provided ineffective assistance of counsel by (8) failing to object to the jury instructions, (9) failing to cross-examine a key witness, (10) failing to seek a continuance for the trial date, (11) failing to object to the presentation of a witness not listed in the discovery responses, and (12) failing to object to prosecutorial misconduct; and finally, (13) whether he was denied due process by prosecutorial misconduct when the prosecutor attempted to "inflame the passions" of the jury, improperly vouched for a witness's credibility, and improperly called a witness a liar.

### A. Procedural Default

**1. State-Related Defaults**

A habeas petitioner procedurally defaults when he "fails to obtain consideration of a claim by a state court," either because he failed to raise the claim before the state court or because a state

_____

[2]Muntaser groups these claims in seven issues presented. For ease of reference, we identify each claim individually.

procedural rule prevented the state court from reaching the merits of the claim. *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72 (1977)). The federal court may not hear the procedurally defaulted claim unless the petitioner shows "cause for the default and prejudice resulting from the default." *Id*. at 550.

By failing to raise the claims before the state court in his direct appeal or his Rule 26(B) application Muntaser has procedurally defaulted claims (8), (12), and the portion of claim (13) regarding improper vouching. *See id*. at 550 (procedurally defaulting a claim "not properly presented to or ruled on by the Ohio courts"). Muntaser has also procedurally defaulted claims (4) and (11) by relying on different theories for support than were presented in state court. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (presenting a claim before the federal habeas court "on a theory which is separate and distinct" from the theory presented in state court results in procedural default). In addition, claim (1) is procedurally defaulted, because the state refused to consider this issue on the merits due to trial counsel's failure to object to the instructions at trial. *See Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010) (recognizing Ohio's contemporaneous-objection rule as an adequate and independent state ground that bars federal habeas review).

Muntaser fails to show cause and prejudice to excuse these defaults. As a result, we may not consider these claims as grounds for habeas relief.

### 2. Federal Default

Muntaser also defaulted claim (7) by failing to file a specific objection to the magistrate's second R&R. *See Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987) (highlighting this

Circuit's longstanding rule that "only those specific objections to the magistrate's report made to the district court will be preserved for appellate review"(internal quotation marks omitted)).

## B. Merits

We address the remaining claims on the merits. Because Muntaser's petition was filed on April 3, 2005, it is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 *et seq*. *Carter v. Mitchell*, 443 F.3d 517, 524 (6th Cir. 2006). Under AEDPA, a federal court shall not grant a "writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court . . . with respect to any claim that was adjudicated on the merits in the state court proceedings" unless the state's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010).

### 1. Sufficiency of the Evidence

In claims (2) and (3), Muntaser alleges that there was insufficient evidence to support his convictions, resulting in a due process violation.

It is well settled that a due process violation results when a state conviction is not based on proof beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 317-18 (1979). Sufficient evidence exists to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. In the habeas context, we cannot simply review de novo the state

7

court's decision; instead we apply the highly-deferential AEDPA standard and conduct a two-part analysis to determine whether the state court unreasonably applied *Jackson*. *Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010). The court first "ask[s] whether the evidence itself was sufficient to convict under *Jackson*," and "[t]he inquiry ends if the panel determines that there was sufficient evidence" to support the conviction. *Id.* Second, if the court finds "that the evidence is insufficient to convict, [it] must then apply AEDPA deference and ask whether the state court was 'objectively unreasonable' in concluding that a rational trier of fact" could find the petitioner guilty beyond a reasonable doubt. *Id.*

Evidence at trial included testimony that: Muntaser planned to have the store set on fire; Muntaser hired Marzouk to set the store on fire; Muntaser gave a key to the store to Marzouk before the fire; the fire was intentionally set by Marzouk; Marzouk died in the fire; neighboring structures suffered damage in the fire; Muntaser toured the store with an insurance agent prior to the policy; Muntaser planned to give some of the insurance proceeds from the fire to Alnajada; and Muntaser was the only person to submit an insurance claim after the explosion. In light of this evidence, resolving all disputes in favor of the prosecution's case, a rational trier of fact could have found the defendant guilty of arson, aggravated arson, and murder. *See* Ohio Rev. Code Ann. §§ 2909.03, 2909.02, 2903.02(B). Further, the evidence is sufficient to establish proximate cause, as serious bodily injury or death is a foreseeable consequence of hiring someone to set an intentional fire. *See* Black's Law Dictionary 1225 (6th ed. 1990) (defining proximate cause as "[t]hat which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces injury, and without which the result would not have occurred").

Because sufficient evidence exists to satisfy the *Jackson* standard, we need not consider whether the state's decision was objectively unreasonable. *Stewart*, 595 F.3d at 653.

**2. Jury Unanimity**

In claim (5), Muntaser asserts a violation of his due process rights occurred because the jury was not informed that it must unanimously agree upon the underlying felony and that the underlying felony must be aggravated arson.

The Ohio Court of Appeals found no merit to this claim. Despite Muntaser's insistence that the trial court failed to advise the jury that it must rely on aggravated arson, and not the lesser crime of arson, to support the felony murder conviction, the state court emphatically stated that "the trial court specifically instructed the jury that [it] could not find Muntaser guilty of murder unless [it] also found him guilty of one of the aggravated arson counts." *State v. Muntaser*, 2003 WL 22455703, at *5. In support of this conclusion, the state court also quoted directly from the jury instructions on point. *Id.* at *3.

The state court decision was not contrary to or an unreasonable application of federal law. The state court is correct that the trial court explicitly made clear the need to find Muntaser guilty of aggravated arson before convicting him of murder. Further, the jury was instructed that they had to reach any decision unanimously. Muntaser mischaracterizes the record when he asserts otherwise. Habeas relief is unwarranted on this basis.

**3. "Actual Innocence"**

In claim (6), Muntaser asserts that he possesses evidence that demonstrates his innocence and that the state denied him due process when it refused to grant him relief, in light of this evidence. Muntaser argues that this alone entitles him to habeas relief.

The Supreme Court explained in *Herrera v. Collins*, that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." 506 U.S. 390, 400 (1993). Because "[t]his rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact," *id*., an actual innocence claim operates only to excuse a procedural default so that a petitioner may bring an independent constitutional challenge, *id*. at 404. Given that Muntaser alleges only a free-standing claim to relief on the grounds of actual innocence, his claim is not cognizable before this court and, accordingly, does not serve as a ground for habeas relief.[3]

**4. Ineffective Assistance of Counsel**

Several of Muntaser's claims allege ineffective assistance of his trial counsel. But Muntaser did not raise ineffective assistance of trial counsel in state court. Instead, he argued—in a motion to reopen filed under Ohio Rule of Appellate Procedure 26(B)—that his *appellate* counsel was ineffective for failing to argue ineffective assistance of trial counsel on direct appeal. A Rule 26(B) motion is, by its nature, limited to ineffective assistance of appellate counsel claims, and "cannot function to preserve the underlying substantive claim" for federal habeas review. *See Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008). And the Ohio Court of Appeals' denial of the Rule 26(B) motion procedurally bars Muntaser from raising his ineffective assistance of trial counsel

---

[3]The possible exception noted in dicta in *Herrera* is not at issue here because Muntaser's case is not a capital one. *See Herrera*, 506 U.S. at 417 (explaining that an exception might exist for a free-standing claim of actual innocence in the habeas context if, among other things, relief were sought in a capital case).

claim in state courts at this time. *See id*. Muntaser has therefore procedurally defaulted the claim. *See id*.; *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

The government, however, waived its procedural-default defense by failing to argue it. *See Johnson v. Mitchell*, 585 F.3d 923, 936 (6th Cir. 2009). We therefore address Muntaser's claim on the merits, but apply a de novo standard of review rather than AEDPA deference, because the issue has not been adjudicated by state courts. *See id*.

In *Strickland v. Washington*, the Supreme Court reiterated that the constitutional right to counsel is the "right to effective assistance of counsel." 466 U.S. 668, 686 (1984) (internal citations and quotation marks omitted). To prevail on a complaint of ineffective assistance of counsel, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. Accordingly, given the difficulties "inherent" in this type of analysis, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id*. Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 692. Accordingly, the defendant must show prejudice in order to prevail on a claim of ineffective assistance of counsel. *Id*. at 693.

### a. Failure to Cross-Examine

In claim (9), Muntaser alleges trial counsel was constitutionally deficient by failing to cross-examine Pascol, a key prosecution witness.

Under *United States v. Cronic*, 466 U.S. 648 (1984), trial counsel must "subject the prosecution's case to meaningful adversarial testing." *Id*. at 659. Muntaser's counsel did so here by actively participating in presenting witnesses and cross-examining the government's witnesses.

11

It is clear from the trial transcript that counsel made a strategic decision not to cross-examine Pascol, whose serious injuries made him a sympathetic witness. Counsel did examine Pascol's prior statements and found no material inconsistencies. Additionally, trial counsel directly attacked Pascol's testimony during closing arguments. Muntaser has not overcome the presumption that counsel's decision to avoid badgering a sympathetic witness "might be considered sound trial strategy" under the circumstances. *See Strickland*, 466 U.S. at 689 (internal quotation marks omitted). This claim therefore cannot provide a basis for habeas relief.

### b. Continuance for Trial Scheduled Over September 11, 2002

In claim (10), Muntaser, who is an Arab-American, alleges that trial counsel provided ineffective assistance of counsel by not seeking a continuance of his trial, which occurred over a period of days including the first anniversary of the September 11, 2001, terrorist attacks ("9/11 attacks").

Muntaser has not met his burden of showing that counsel's failure to change the trial date caused him prejudice. It is true that Muntaser—along with many other trial participants—is Arab-American. But, as the district court pointed out, Muntaser was not able to obscure his ethnicity either before or after the anniversary of the 9/11 attacks. Indeed, there is nothing to suggest that, but for counsel's failure to seek a continuance, "the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 694. This claim therefore does not present a basis for habeas relief.[4]

### 5. Prosecutorial Misconduct

---

[4]Muntaser's citation to *State v. Atalla*, 813 N.E.2d 84 (Ohio 2004), does not change this conclusion. *Atalla* is not clearly established federal law and, in any event, the conduct at issue in *Atalla* is factually distinguishable from Muntaser's case.

Finally, in the portions of claim (13) not discussed previously, Muntaser alleges a violation of his due process rights occurred when the prosecutor attempted to inflame the passions of the jury, and when the prosecutor improperly called a witness a liar during closing arguments. Because Muntaser raised prosecutorial misconduct for the first time in his Rule 26(b) motion, the claim is procedurally defaulted. The government only argues procedural default with respect to a portion of the claim—relating to improper vouching—and addresses the remainder of the claim on the merits. It has therefore waived its procedural-default defense with respect to the remainder. *See Johnson*, 585 F.3d at 936. We review that portion of the claim on the merits applying a de novo standard of review. *See id.*

Muntaser points to three prosecutorial comments that allegedly called attention to his Arab-American background and inflamed the jury. First, a prosecutor asked a translator about his prior work on the black box from 9/11 in order to establish the translator's expertise in Arabic. Second, a different prosecutor spoke Arabic briefly during trial when a witness was struggling to summarize a taped Arabic conversation in English. And, third, a prosecutor stated during closing arguments that the jury should base its verdict on the real issue—an insurance scam—and not on the defendant's ethnicity.

We do not lightly infer that a prosecutor intends ambiguous or innocuous remarks to have their "most damaging meaning or that a jury . . . will draw that meaning from the plethora of less damaging interpretations." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974); *see also Durr v. Mitchell*, 487 F.3d 423, 441 (6th Cir. 2007). All three of the prosecutors' comments here were brief. The first two were relevant to the trial proceedings. The third was intended to ensure that the jurors' passions would not be inflamed by Muntaser's ethnicity. There is no indication that the comments

13

were "calculated to incite the passions and prejudices of the jurors," *see Beuke v. Houk*, 537 F.3d 618, 649 (6th Cir. 2008), much less that they rendered the trial fundamentally unfair.

With regard to Muntaser's claim that the prosecution improperly called a witness a liar, Muntaser mischaracterizes the record. The record, read accurately, presents nothing to support a cognizable habeas claim.

### III. CONCLUSION

For the foregoing reasons, we **DENY** the petition.