OPINION
{¶ 1} Francisco Guerra appeals from his conviction of gross sexual imposition after a jury trial. In a single assignment of error Guerra contends his conviction was against the manifest weight of the evidence presented to that jury. [D1]
 {¶ 2} Guerra was convicted upon the testimony of an eight-year-old child we will refer to in this opinion as "T.J." On the morning of July 20, 2005, T.J. was at the home of Rob and Dina Taylor in the company of her mothe, r Amy, and Amy's fiancee, Jesse Guerra, the defendant's nephew. T.J. watched cartoons on the television in the living room while her mother and Jesse slept on a couch and chair in the room. T.J. testified at the trial that while her mother and her mother's fiancee were sleeping, the defendant came into the living room and began watching television with her. T.J. testified that while she was sitting on the couch not occupied by her mother, the defendant came over to her and asked her for a kiss. (T. 22). T.J. said she told him "no," but the defendant nevertheless bent over and gave her a kiss on her cheek. She said the defendant then touched her chest and her belly and then her "butt." (T. 24). She said he then touched her between her legs. (T. 25). T.J. testified she pushed the defendant away and began crying and woke up her mother. (T. 38). T.J. said she was wearing regular clothes and the defendant touched her outside her clothing. (T. 19). T.J. testified that when she began crying the defendant got his shoes and ran into a back room of the Dayton house. T.J. testified that after she told her mother what the defendant did to her, her mother began yelling at him. (T. 27). She said her mother and she laid on the couch for a long time to calm her down. On cross-examination, she clarified that the defendant was still in the living room when her mother began yelling at him. She testified the defendant left the Dayton house shortly thereafter.
 {¶ 3} Amy J. testified she was sleeping on the Taylors' living room couch when her daughter, T.J., awoke her visibly upset and crying. (T. 51). She testified she looked over and saw the defendant get off the other couch and go into the back bedroom. She testified T.J. told her that Frank (the defendant) had been touching her, kissing her, and rubbing her private areas. (T. 61). Amy said she got up and started hollering at the defendant calling him a child molester and that she wanted to kill him. (T. 52). She said the defendant did not reply to her accusation. She said she then called to try to get a ride to the police station to report what had happened to her daughter. She said she delayed calling the police because her fiancee, Jesse, wanted to take care of the matter himself. She testified that night she went to the police station with T.J. and spoke with Officer O'Reilly.
 {¶ 4} Piqua Police Officer Kevin O'Reilly testified he interviewed T.J. on July 21, 2005 at the police station in the company of her mother. O'Reilly said T.J. described where the defendant touched her by circling locations on a drawing she made for him. She circled the breast area, the belly button area, the butt area and the vaginal area of the drawing. (T. 77, 78). He said T.J. was able to name all the relevant body parts but the vagina. (T. 80). The defendant did not testify in his own defense.
 {¶ 5} Appellant argues that the jury's verdict was against the manifest weight of the evidence because the "series of events do not add up." (Brief at p. 2). He points out that despite all the commotion caused by T.J. and her mother after T.J. told her mother about the defendant's conduct, the mother's fiancee, Jesse, never woke up despite being in the living room with them at the time. Also Appellant notes that despite being told by her daughter that she had just been inappropriately touched by the defendant, she went back to sleep rather than contacting the police. Also he notes that T.J. gave conflicting testimony. He notes that on direct examination T.J. testified that he left the living room and went into the bedroom before her mother woke up, and on cross-examination she testified the defendant was on his way to the back bedroom when her mother woke up.
 {¶ 6} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." In this situation, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins, 78 Ohio St.3d 380, 387 (1997).
 {¶ 7} Offenses involving sexual touching present peculiar problems for reviewing courts because there often is no corroborating evidence presented by the State to buttress the alleged victim's accusation. Indeed in Ohio, one cannot be convicted of sexual imposition solely upon the victim's testimony unsupported by other evidence. See R.C.2907.06(B). Corroboration is not required to support the alleged victim's testimony when the offense charged is R.C. 2907.05. Some courts have found corroborating evidence present in the child victim's excited statement shortly after the alleged crime. See State v. Ahmed (June 16, 2005), Cuyahoga App. No. 84220, 2005-Ohio-2999. In that case the alleged victims of sexual imposition made their accusing statements immediately following the offenses while they were upset, crying, and very emotional. Id at ¶ 123. The court of appeals held the admission of this testimony by the trial court as excited utterances pursuant to Evid.R. 803(2) was not an abuse of discretion. Id. at ¶ 124. See also, State v.Bragg (Feb. 13, 2004), Montgomery App. No. 19491, 2004-Ohio-659.
 {¶ 8} Conviction of gross sexual imposition does not require that the child's testimony be corroborated, but corroboration is relevant to an analysis of whether the verdict is against the manifest weight of the evidence. T.J. immediately reported the defendant's conduct to her mother in an excited state. Her mother immediately relayed that accusation to the defendant and he said nothing in reply. The jury was in the best position to evaluate the credibility of T.J. and her mother. The evidence in this matter does not weigh heavily against Appellant's conviction. We find the evidence is not against the manifest weight of the judgment below. The assignment of error is overruled.
 {¶ 9} The judgment of the trial court will be affirmed.
GRADY, P.J., and DONOVAN, concur.